Pedro MEDINA, Plaintiff,

v.

Michael MINERVA, etc.,
et al., Defendants.

No. 95–144–Civ–J–20.

United States District Court,
M.D. Florida,
Jacksonville Division.

Nov. 21, 1995.

Pedro Medina, Raiford, FL, pro se.

F. Damon Kitchen, Richard Lee Ruth, Jr., Corbin, Dickinson, Duvall & Kitchen, Jacksonville, FL, for Michael J. Minerva, Head of the Office of Capital Collateral Representative, Judith J. Dougherty, Gail E. Anderson, Lawyers at the Capital Collateral Representative.

### ORDER GRANTING DEFENDANTS' MOTION TO DISMISS

SCHLESINGER, District Judge.

#### I. Status

Plaintiff Pedro Medina, an inmate of the Florida penal system, who is proceeding *pro se* and *in forma pauperis,* initiated this action by filing a civil rights complaint pursuant to 42 U.S.C. § 1983 on February 17, 1995. He named the following individuals as the Defendants in this action: (1) Michael Minerva, the Head of the Office of the Capital Collateral Representative; (2) Judith Dougherty, a lawyer at the Office of the Capital Collateral Representative; and, (3) Gail E. Anderson, a lawyer at the Office of the Capital Collateral Representative.

## II. Plaintiff's Complaint

Plaintiff claims the Defendants withheld evidence and failed to represent him fairly and effectively. Plaintiff's Complaint, filed February 17, 1995, at 2. Specifically, they refused to present affidavits which would have proved his innocence. *Id.* Defendant Minerva failed to correct the conflict that existed between Plaintiff and Defendants Anderson and Dougherty. *Id.* at 7. He was advised of this conflict, but his failure to investigate it endangered Plaintiff's appeals. *Id.* at 8. Defendant Dougherty represented Plaintiff, but failed to present important material, favorable and relevant witness testimony as well as new evidence. *Id.* at 9. Defendant Anderson also represented Plaintiff. *Id.* at 12. During an interview with Plaintiff on November 8, 1994, she referred to Plaintiff as a "negro." *Id.* Further, she refused to present important evidence and testimony concerning the hatred toward Plaintiff's race. *Id.* at 13.

Plaintiff concludes the Defendants deprived him of a fair appellate review in his federal court case: 91–936–Civ–Orl–18. *Id.* at 18–19. On October 31, 1994, the United States Court of Appeals for the Eleventh Circuit refused to consider Plaintiff's 26 affidavits since they should have been presented by counsel. *Id.* at 20.

As relief, Plaintiff requests the Court to immediately vacate his death sentence until another attorney not related to the Office of the Capital Collateral Representative is appointed and also to grant him declaratory relief, compensatory and punitive damages, and any other damages the Court deems appropriate. *Id.* at 24.

## III. Pending Motion to Dismiss

On August 4, 1995, Defendants Minerva, Dougherty, and Anderson filed a Motion to Dismiss Plaintiff's Complaint (Doc. # 18), in which they contend the complaint should be dismissed because Plaintiff has failed to state a claim upon which relief may be granted and on Eleventh Amendment and color of state law grounds. On August 29, 1995, the Court ordered Plaintiff to file an opposition to Defendants' Motion to Dismiss. On September 20, 1995, Plaintiff filed an opposition. *See* Plaintiff's Motion of Opposition to Defendants' Motion for Summary Judgment (Doc. # 21).

## IV. Motion to Dismiss Standard

■ In determining whether to grant a Fed.R.Civ.P. 12(b)(6) motion to dismiss, the Court primarily considers the allegations in the complaint. Since Plaintiff is proceeding *pro se*, the Court will construe the complaint more liberally than it would formal pleadings drafted by lawyers. *Hughes v. Rowe*, 449 U.S. 5, 9, 101 S.Ct. 173, 175, 66 L.Ed.2d 163 (1980) (per curiam); *Powell v. Lennon*, 914 F.2d 1459, 1463 (11th Cir.1990). In considering a motion to dismiss under Fed.R.Civ.P. 12(b)(6), the complaint is construed in the light most favorable to Plaintiff and its allegations are taken as true. *Blackston v. State of Alabama*, 30 F.3d 117, 119 (11th Cir.1994); 5 C. Wright and A. Miller, *Federal Practice and Procedure* § 1357 (1969). The complaint should not be dismissed for failure to state a claim upon which relief can be granted "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Sea Vessel, Inc., v. Reyes*, 23 F.3d 345, 347 (11th Cir.1994) (citation omitted).

## V. Conclusions and Law

■ In any 42 U.S.C. § 1983 [1] cause of action, the initial inquiry must focus on whether the two essential elements to a section 1983 action are present.

A successful section 1983 action requires a showing that the conduct complained of (1) was committed by a person acting under color of state law and (2) deprived the complainant of rights, privileges, or immunities secured by the Constitution or laws of the United States.

*Harvey v. Harvey*, 949 F.2d 1127, 1130 (11th Cir.1992); *Hale v. Tallapoosa County*, 50

---

1. Section 1983 provides in relevant part that "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage ... subjects, or causes to be subjected, any citizen of the United States ... to the deprivation of any rights ... secured by the Constitution and laws, shall be liable to the party injured in an action at law ... [or] suit in equity." 42 U.S.C. § 1983.

F.3d 1579 (11th Cir.1995). In addition, for liability under 42 U.S.C. § 1983, Plaintiff must allege an affirmative causal connection between the Defendant's conduct and the constitutional deprivation. *Swint v. City of Wadley, Alabama,* 51 F.3d 988 (11th Cir. 1995); *Tittle v. Jefferson County Commission,* 10 F.3d 1535, 1541 n. 1 (11th Cir.1994). Further, the allegations in the complaint must be detailed enough to notify the Defendant of the claims. The United States Court of Appeals for the Eleventh Circuit has stated:

> It is well-established that such conclusory allegations are insufficient to state a § 1983 claim for relief. *See Fullman v. Graddick,* 739 F.2d 553, 556–57 (11th Cir. 1984).

> Even under the so-called notice rules of pleading, the complaint must state a cause of action sufficient to affirmatively show the plaintiff is entitled to relief, for "[i]t is not enough, to indicate merely that the plaintiff has a grievance but sufficient detail must be given so that the defendant, and the Court, can obtain a fair idea of what the plaintiff is complaining, and can see that there is some legal basis for recovery." *Id.* at 556 (citations omitted).

*L.S.T., Inc., v. Crow,* 49 F.3d 679 (11th Cir. 1995).

Plaintiff initiated this civil rights case, claiming the Defendants, who represented him in his state and federal habeas corpus proceedings, violated his rights under the Fifth, Sixth, Eighth, and Fourteenth Amendments of the United States Constitution as well as Article I, Sections 2 and 9 of the Florida Constitution. Specifically, Plaintiff alleges the Defendants denied him his constitutional rights by failing to present certain witness affidavits and other evidence during his habeas corpus proceedings in state and federal court and by failing to investigate other alleged individuals who may have committed the murder for which Plaintiff was convicted. Plaintiff also alleges Defendant Anderson violated his constitutional rights by racially harassing him during the course of her representation of him. Finally, he makes broad conclusory allegations that the actions of Defendants in not presenting the affidavits and other evidence to the courts amounted to conspiracy with the State of Florida. Plaintiff has sued Defendants Anderson and Dougherty under 42 U.S.C. § 1983 in their individual capacities and has sued Defendant Minerva in both his official and individual capacities.

Defendant Minerva is the Capital Collateral Representative for the State of Florida and is ultimately responsible for the legal representation of indigent criminal defendants who have been sentenced to death in state criminal proceedings. Defendants Dougherty and Anderson are Assistant Capital Collateral Representatives who assist in such representation of indigent criminal defendants. Consequently, the duties and functions of the Defendants in this case are very similar to those of public defenders and assistant public defenders. In the instant case, the office of the Capital Collateral Representative represented Plaintiff in his state and federal habeas corpus proceedings challenging his death sentence and confinement.

In *Polk County v. Dodson,* 454 U.S. 312, 324–25, 102 S.Ct. 445, 453–54, 70 L.Ed.2d 509 (1981), the United States Supreme Court held that a public defender does not act under color of state law when performing a lawyer's traditional functions as counsel to a defendant in a criminal proceeding or when exercising independent professional judgment in such a proceeding. Thus, where a plaintiff's section 1983 complaint had challenged such activities by his public defender, the complaint was dismissed for failure to state a claim, and the public defender was deemed as not having acted under color of state law. *Id.*

Other courts, including the United States Court of Appeals for the Eleventh Circuit, have concluded that public defenders and their assistants generally do not act under color of state law when representing indigent defendants in criminal proceedings, and therefore cannot normally be sued in a section 1983 case for actions arising out of such representation. For example, in *Wahl v. McIver,* 773 F.2d 1169, 1173 (11th Cir.1985), the court dismissed a plaintiff's section 1983 claims against a public defender who represented him, finding that the public defender

did not act under color of state law. Similarly, in *O'Brien v. Colbath*, 465 F.2d 358, 359 (5th Cir.1972), the court held that section 1983 was never intended as a vehicle for prosecuting malpractice suits against court-appointed attorneys. Finally, in *United States ex rel. Simmons v. Zibilich*, 542 F.2d 259, 261 (5th Cir.1976), the court held alleged malpractice-type actions or omissions by a court-appointed volunteer attorney in relation to a criminal trial were not under color of state law and thus could not serve as a basis for a section 1983 action against the attorney. *See also, Nelson v. Stratton*, 469 F.2d 1155 (5th Cir.1972); *Cornes v. Munoz*, 724 F.2d 61 (7th Cir.1983) (public defender assigned to handle a defendant's appeal did not act under color of state law, and thus defendant's section 1983 claim against the attorney for allegedly refusing to pursue various issues on appeal was properly dismissed).

 In this case, the duties and functions of the Defendants are analogous to those of public defenders. An analysis of the Florida Statutes clearly reflects the functional similarities between the Capital Collateral Representative and a public defender. Pursuant to Fla.Stat. § 27.702, the Capital Collateral Representative and his or her assistants represent persons convicted and sentenced to death in Florida who are without counsel and who are not able to secure counsel due to their indigency. Further, a determination of indigency by any trial court in Florida for purposes of representation by the public defender constitutes prima facie evidence of indigency for purposes of representation by the Capital Collateral Representative. Finally, representation by the Capital Collateral Representative commences when a defendant's files are received from the appropriate public defender. Thus, the Capital Collateral Representative and his or her assistants clearly fall under the doctrine enunciated in *Dodson*, and their actions in representing defendants in criminal proceedings are generally not under color of state law. Further, Plaintiff's general claim of conspiracy is insufficient to arise to the level of a federal constitutional claim. Plaintiff has not supported his conclusory claim with any specific facts showing the existence of a conspiracy. Plaintiff has not identified any state officials with whom the defendants may have conspired.

 "It is clear, of course, that in the absence of consent a suit in which the State or one of its agencies or departments is named as the defendant is proscribed by the Eleventh Amendment." *Pennhurst State School and Hosp. v. Halderman*, 465 U.S. 89, 100, 104 S.Ct. 900, 908, 79 L.Ed.2d 67 (1984) (citations omitted); *see Hill v. Dept. of Corrections*, 513 So.2d 129 (Fla.1987), *cert. denied*, 484 U.S. 1064, 108 S.Ct. 1024, 98 L.Ed.2d 989 (1988). "This jurisdictional bar applies regardless of the nature of the relief sought." *Pennhurst*, 465 U.S. at 100, 104 S.Ct. at 908. Further, to the extent Plaintiff seeks retroactive relief against Defendant Minerva in his official capacity, the action is barred by the Eleventh Amendment. Official capacity actions seeking damages are deemed to be against the entity of which the officer is an agent. *Kentucky v. Graham*, 473 U.S. 159, 165–67, 105 S.Ct. 3099, 3104–06, 87 L.Ed.2d 114 (1985). Regardless of the entity named as the defendant, the Eleventh Amendment bars retroactive damage awards that must be paid by the State. *Parker v. Williams*, 862 F.2d 1471, 1475 (11th Cir. 1989). Official capacity actions for prospective relief, however, are not treated as actions against the State. *Kentucky*, 473 U.S. at 167 n. 14, 105 S.Ct. at 3106 n. 14. The Eleventh Amendment does not insulate official capacity defendants from actions seeking prospective injunctive relief. *See Wu v. Thomas*, 863 F.2d 1543, 1550 (11th Cir.1989); *Parker*, 862 F.2d at 1475.

Finally, this Court is of the opinion Plaintiff's claims challenge his underlying state court conviction. On June 24, 1994, the United States Supreme Court decided *Heck v. Humphrey*, —— U.S. ——, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994), a seminal case holding "a cause of action seeking damages under § 1983 for an unconstitutional conviction or sentence does not accrue until the conviction or sentence has been invalidated...." *Stephenson v. Reno*, 28 F.3d 26, 27–28 (5th Cir.1994) (per curiam). *Heck* leads this

Court to conclude that this case cannot proceed. An explanation follows.

In *Preiser v. Rodriguez*, 411 U.S. 475, 476, 93 S.Ct. 1827, 1829, 36 L.Ed.2d 439 (1973), state prisoners deprived of good-time credits by the New York State Department of Correctional Services filed a civil rights action pursuant to 42 U.S.C. § 1983 seeking an injunction requiring the restoration of the good-time credits, resulting in their release from confinement. The inmates did *not* seek money damages. The issue before the court was "whether state prisoners seeking such redress may obtain equitable relief under the Civil Rights Act, even though the federal habeas corpus statute, 28 U.S.C. § 2254, clearly provides a specific federal remedy." *Id.* at 477, 93 S.Ct. at 1830. After noting the significant interrelationship between the habeas corpus statutes (28 U.S.C. §§ 2241 and 2254) and the Civil Rights Act (42 U.S.C. § 1983), the court recognized "the strong considerations of comity that require giving ... the States the first opportunity to correct the errors made in the internal administration of their prisons." *Preiser*, 411 U.S. at 482–83, 492, 93 S.Ct. at 1832–33, 1837.

Limiting its holding to the situation where only equitable relief, i.e., the restoration of good-time credits, is sought, the Supreme Court decided "when a state prisoner is challenging the very fact or duration of his physical imprisonment, and the relief he seeks is a determination that he is entitled to immediate release or a speedier release from that imprisonment, his sole federal remedy is a writ of habeas corpus." *Id.* at 500, 93 S.Ct. at 1841.

However, in dicta, the court stated:

If a state prisoner is seeking damages, he is attacking something other than the fact or length of his confinement, and he is seeking something other than immediate or more speedy release—the traditional purpose of habeas corpus. In the case of a damages claim, habeas corpus is not an appropriate or available federal remedy. Accordingly, as petitioners themselves concede, a damages action by a state prisoner could be brought under the Civil Rights

Act in federal court without any requirement of prior exhaustion of state remedies. *Id.* at 494, 93 S.Ct. at 1838.

On June 24, 1994, the United States Supreme Court addressed the question "whether a state prisoner may challenge the constitutionality of his conviction in a suit for damages under 42 U.S.C. § 1983." *Heck*, —— U.S. at ——, 114 S.Ct. at 2368. Petitioner sought monetary damages but did not seek injunctive relief or release from custody. *Id.* The Supreme Court again recognized the interrelationship between 42 U.S.C. § 1983 and 28 U.S.C. § 2254 and noted the "case lies at the intersection" of these federal laws. *Id.*, at ——, 114 S.Ct. at 2369.

Looking back to *Preiser v. Rodriguez*, the *Heck* court recognized that *Preiser* did not carve out an exception and require exhaustion in certain circumstances under § 1983, but rather determined "that certain claims by state prisoners are not cognizable under that provision" and must be exhausted and raised in habeas corpus proceedings. *Heck*, 114 S.Ct. at 2369. Most importantly, for purposes of the case at bar, the court further stated:

This case is clearly not covered by the holding of *Preiser*, for petitioner seeks not immediate or speedier release, but monetary damages, as to which he could not "have sought and obtained fully effective relief through federal habeas corpus proceedings." *Id.*, at 488, 93 S.Ct., at 1835. *See also id.*, at 494, 93 S.Ct., at 1838–1839; *Allen v. McCurry*, 449 U.S. 90, 104, 101 S.Ct. 411, 420, 66 L.Ed.2d 308 (1980). In dictum, however, *Preiser* asserted that since a state prisoner seeking only damages "is attacking something other than the fact or length of ... confinement, and ... is seeking something other than immediate or more speedy release[,] ... a damages action by a state prisoner could be brought under [§ 1983] in federal court without any requirement of prior exhaustion of state remedies." 411 U.S., at 494, 93 S.Ct., at 1838. That statement may not be true, however, when establishing the basis for the damages claim necessarily demonstrates the invalidity of the conviction. In that situation, the claimant can be

said to be "attacking the fact or length of confinement," bringing the suit within the other dictum of *Preiser:* "Congress has determined that habeas corpus is the appropriate remedy for state prisoners attacking the validity of the fact or length of their confinement, and that specific determination must override the general terms of § 1983." *Id.,* at 490, 93 S.Ct., at 1836. In the last analysis, we think the dicta of *Preiser* to be an unreliable, if not an unintelligible, guide: that opinion had no cause to address, and did not carefully consider, the damages question before us today.

*Id.,* at —— —— ——, 114 S.Ct. at 2369–70.

Finally, in *Heck,* the Supreme Court found:

> [I]n order to recover damages for an allegedly unconstitutional conviction, or for "harm caused by actions whose unlawfulness would render a conviction or sentence invalid," a prisoner must show that the conviction or sentence has been "reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus." —— U.S. at ——, 114 S.Ct. at 2372. The Court analogized such a claim to the tort of malicious prosecution, one element of which is "the termination of the prior criminal proceeding in favor of the accused." *Id.* at ——, 114 S.Ct. at 2371.

*Stephenson v. Reno,* 28 F.3d at 27 (quoting *Heck v. Humphrey,* 114 S.Ct. at 2371–72).

■ Taken together, *Preiser* (which involved a claim arising out of disciplinary proceedings as distinguished from a criminal conviction) and *Heck* (which rejects the dicta in *Preiser* to the effect that a distinction should be drawn between actions for damages and injunctive relief) stand for the proposition that a prisoner has no cause of action for money damages under § 1983 unless and until the state court conviction is challenged and reversed by an internal administrative ruling, declared invalid by a state court, or called into question by a federal court's issuance of a writ of habeas corpus. This conclusion does "not engraft an exhaustion requirement upon § 1983 ...", *Heck,* —— U.S. at ——, 114 S.Ct. at 2373; however, it does mean that the action for money damages has not accrued until the state court conviction "has been invalidated." *Id.,* at ——, 114 S.Ct. at 2374. "Such an action, if brought prior to invalidation of the conviction or sentence challenged, must therefore be dismissed as premature." *Abella v. Rubino,* 63 F.3d 1063, 1065 (11th Cir.1995) (per curiam) (footnote omitted) (citing *Heck,* —— U.S. at ——, 114 S.Ct. at 2372).

■ In the case at bar, Plaintiff seeks monetary damages, and sets forth claims which in effect challenge his state court conviction. After thoroughly reviewing the record in conjunction with the *Heck* decision, this Court finds this case comes within the ambit of *Heck* since the action for money damages has not accrued. There is not a concern about the running of the statute of limitations since *Heck* teaches that such damages claims do not accrue until the plaintiff's conviction or sentence has been invalidated. *Abella,* 63 F.3d at 1066. In this case, Plaintiff has failed to show the invalidation of the state court conviction.

Therefore, it is now

**ORDERED AND ADJUDGED:**

1. Defendants' August 4, 1995, Motion to Dismiss Plaintiff's Complaint (Doc. # 18) is **GRANTED,** and this case is **DISMISSED.**

2. The Clerk of the Court shall enter judgment accordingly.

3. This case is **CLOSED.**

**DONE AND ORDERED.**