Jason LONDON, Plaintiff,

v.

**PENNSYLVANIA BOARD OF PROBATION AND PAROLE, et al., Defendants.**

No. CIV. A. 00–4955.

United States District Court, E.D. Pennsylvania.

March 23, 2001.

Jason London, West Chester, PA, pro se.

Katherine H. Rebillard, Office of Atty. General, Philadelphia, PA, for Defendants.

### *MEMORANDAM AND ORDER*

KATZ, Senior District Judge.

■ Plaintiff Jason London, a prisoner of Chester County Prison who is acting *pro se*, brings a claim for damages only under 42 U.S.C. § 1983 with respect to 219

days of allegedly undeserved imprisonment.[1] Defendant Mary Ann Tillman[2] is a parole agent of the Pennsylvania Board of Probation and Parole and brings a motion for summary judgment. The essence of the complaint is that while plaintiff was pursuing administrative procedures to address his concerns about his sentence, defendant Tillman told the plaintiff that his complaints were unfounded and that his sentence had been correctly calculated.[3]

■ Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. *See* FED.R.CIV.P. 56(c).[4,5] The court considers plaintiff's claim as stated under Section 1983 as well as under the cruel and unusual clause of the Eighth Amendment. *See*

1. Both parties appear to concede that Mr. London was released from custody with respect to the disputed sentences on either November 23 or 26, 1998. Thus, the court proceeds on the assumption that Mr. London's present incarceration is unrelated to the sentences that he challenges in this action. In the alternative, however, if Mr. London is in fact currently incarcerated pursuant to the sentences that he disputes in this action, the action would appear to be premature pursuant to *Heck v. Humphrey*, 512 U.S. 477, 490, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994), which held that a cause of action for damages under Section 1983 for an unconstitutional conviction or sentence, where the claimant is attacking the fact or length of confinement such that the action is more appropriate to a habeas corpus action, does not accrue until the conviction or sentence has been invalidated. *See also Medina v. Minerva*, 907 F.Supp. 379, 383–85 (M.D.Fla.1995)

2. The Pennsylvania Board of Probation and Parole was dismissed as a defendant by Order of this court on February 22, 2001. Service on a defendant, Robert Johnson, was attempted by the United States Marshal but returned unexecuted. Therefore, this case is also dismissed as to defendant Robert Johnson. *See* Fed.R.Civ.P. 4(m).

3. Defendant Tillman told plaintiff that there was "nothing wrong with [the] Green sheet." *See* Compl. at Section IV.b. According to the defendant, the "green sheet" refers to Parole Board Action dated November 25, 1998, which set plaintiff's maximum release date at November 26, 1998. *See* Def.'s Mot. for Summ. J. at 6 and Ex. 6P. It is not clear to the court whether that Board Action is the specific document at issue, as plaintiff's pursuit of administrative remedies appears to

have taken place earlier than that Board Action. Regardless, the court understands the essence of the complaint to be that defendant told plaintiff that plaintiff's concerns about the length of his sentence were unfounded.

4. At the summary judgment stage, the court does not weigh the evidence and determine the truth of the matter; rather, it determines whether or not there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). In making this determination, all of the facts must be viewed in the light most favorable to, and all reasonable inferences must be drawn in favor of, the non-moving party. *Id.* at 255, 106 S.Ct. 2505. The moving party has the burden of showing there are no genuine issues of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Mathews v. Lancaster General Hosp.*, 87 F.3d 624, 639 (3d Cir.1996). In response, the non-moving party must adduce more than a mere scintilla of evidence in its favor, and cannot simply reassert factually unsupported allegations contained in its pleadings. *See Anderson*, 477 U.S. at 248, 250, 106 S.Ct. 2505; *Celotex*, 477 U.S. at 325, 106 S.Ct. 2548; *Williams v. Borough of West Chester*, 891 F.2d 458, 460 (3d Cir.1989).

5. A *pro se* complaint must be held to less stringent standards than formal pleadings drafted by lawyers. *See Haines v. Kerner*, 404 U.S. 519, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972); *Lewis v. Att'y Gen. of United States*, 878 F.2d 714, 722 (3d Cir.1989). A verified pro se complaint may be treated as an affidavit for purposes of determining defendants' summary judgment motion. *See Reese v. Sparks*, 760 F.2d 64, 67 n. 3 (3d Cir.1985).

*Sample v. Diecks*, 885 F.2d 1099, 1108 (3d Cir.1989) ("[T]here can be no doubt that imprisonment beyond one's term constitutes punishment within the meaning of the Eighth Amendment.").

■ With respect to plaintiff's Section 1983 claim, summary judgment must be granted as to defendant Tillman because the law does not impose damages liability for a Section 1983 violation on an individual acting in her official capacity.[6] *See Kentucky v. Graham*, 473 U.S. 159, 169 and n. 17, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985). The United States Supreme Court has held that "absent waiver by the State or valid congressional override, the Eleventh Amendment bars a damages action against a State in federal court. This bar remains in effect when State officials are sued for damages in their official capacity." *Id.* at 169, 105 S.Ct. 3099.[7] The Commonwealth of Pennsylvania has not waived its rights under the Eleventh Amendment. *See* 42 PA.CONS.STAT. § 8521(b) ("Nothing contained in this subchapter shall be construed to waive the immunity of the Commonwealth from suit in Federal courts guaranteed by the Eleventh Amendment to the Constitution of the United States."). Furthermore, the United State Supreme Court has specifically held that Congress did not intend Section 1983 to abrogate a State's Eleventh Amendment immunity. *See Graham*, 473 U.S. at 169 at n. 17, 105 S.Ct. 3099 (citing *Quern v. Jordan*, 440 U.S. 332, 99 S.Ct. 1139, 59 L.Ed.2d 358 (1979)).

■ With respect to the Eighth Amendment claim,[8] summary judgment must also be granted. Mr. London's sentencing history is complex, but well documented, and the documents clearly refute the allegations stated in the plaintiff's complaint. This sentencing history is as follows: on August 13, 1991, Mr. London was sentenced by Judge Salus to identical and concurrent sentences with respect to two distinct offenses. On the same day, in an unrelated proceeding for another offense, Judge Smythe sentenced him to a term of 1 year 6 months to 4 years 11 months. Mr. London first began serving Judge Salus' sentences, and was at some point

---

**6.** In naming Tillman as a defendant, plaintiff described her place of employment and section or unit as "(Montgomery County Prison) State Representa '[sic]". Compl. at Section II.b.2. The form on which the complaint was filed appears to have left insufficient room for plaintiff to complete the full word, but the court assumes that the intended word is "Representative." Although the fact that plaintiff London is suing for punitive damages may indicate a claim against Tillman in her individual capacity, *see Gregory v. Chehi*, 843 F.2d 111, 120 (3d Cir.1988), the use of the phrase "State Representative" indicates strongly to the court that plaintiff intended to sue defendant Tillman in her official capacity. *Cf. Hendon v. Crane*, 1993 WL 315980, at *7 (D.Del. Mar.2, 1993) (construing complaint as seeking damages in both individual and official capacities, where plaintiff sought damages from each individual defendant directly and acknowledged other distinctions between individual and institutional defendants).

**7.** The Eleventh Amendment to the United States Constitution provides: "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State."

**8.** To succeed on an Eighth Amendment "cruel and unusual punishment" claim, a prisoner must prove two elements: (1) that objectively the deprivation of a basic human need was "sufficiently serious," and (2) that subjectively the prison officials acted with a "sufficiently culpable state of mind," *see Johnson v. Quinones*, 145 F.3d 164, 167 (4th Cir.1998) (citing *Wilson v. Seiter*, 501 U.S. 294, 298, 111 S.Ct. 2321, 115 L.Ed.2d 271 (1991)). The defendant must have known of and disregarded the risk of the violation. *See Farmer v. Brennan*, 511 U.S. 825, 837, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994).

placed on probation. Beginning August 3, 1992, he then began to serve Judge Smythe's sentence, in Montgomery County prison and then on parole, until June 11, 1996, when that term was interrupted (with 1 year 19 days remaining) by a violation of Judge Salus' term of probation. Judge Salus revoked probation and sentenced Mr. London to 6 months to two years in the State Correctional Institution at Greensberg, which Mr. London served until November 7, 1997. On that date, he was recommitted to Montgomery County prison to serve the remaining 1 year 19 days of Judge Smythe's sentence. After serving that time, he was released on either November 23 or 26, 1998.[9] The court now addresses each of Mr. London's challenges to his sentences in turn.

■ First, Mr. London challenges the change of his maximum release date from July 3, 1997 to July 12, 2000. *See* Board Actions of August 23, 1996 (setting release date at July 3, 1997), December 2, 1996 (vacating that date) and November 14, 1997 (resetting date at July 12, 2000). However, on November 25, 1998, the Board vacated the July 12, 2000 date and reset plaintiff's maximum release date as November 26, 1998, *see* Def. Ex. 6P, and as noted previously, plaintiff was in fact released either on that day or three days earlier. Thus, the disputed July 12, 2000 date was corrected. Plaintiff also claims, however, that the revised date of November 26, 1998 was also incorrect, and that the correct date was July 3, 1997. However, July 3, 1997 represented the end of Judge Smythe's maximum original sentence, *see e.g.,* Deft. Ex. 6H, *had it not been interrupted by the Judge Salus' sentence for plaintiff's violation of probation.*

Because Judge Smythe's original sentence was interrupted by Judge Salus' violation of probation sentence, however, the maximum release date changed. Plaintiff served Judge Salus's violation of probation sentence, and was then recommitted beginning July 7, 1997 to serve the 1 year and 19 days that were remaining of Judge Smythe's sentence. The period from July 7, 1997 to November 26, 1998 is 1 year and 19 days. Thus, the maximum release date of November 26, 1998 is correct.

■ On the same topic, plaintiff appears to claim that the maximum release date was incorrect because the six months backtime imposed pursuant to Judge Salus' revocation of probation should have run concurrently with the remaining 1 year and 19 days of Judge Smythe's sentence. However, Pennsylvania presumes that "where different courts have sentenced [a person] for different offenses to be served at separate and distinct institutions ... absent any written indication to the contrary, it is presumed that the sentences are to run consecutively." *See Comm. v. Lundberg,* 422 Pa.Super. 495, 619 A.2d 1066, 1069 (1993) (carving out exception to statutory presumption of concurrency) (citing *Comm. v. Pfeiffer,* 396 Pa.Super. 641, 579 A.2d 897, 900 (1990)). The situation described in *Lundberg* and *Pfeiffer* is precisely the situation that occurred in this case. Judge Salus sentenced the plaintiff for violation of probation with respect to the two offenses over which he had jurisdiction, specifically to be served in a state institution. Judge Smythe's sentence's was for a different offense, specifically to be served a separate and distinct county institution. Furthermore, while Judge Salus explicitly specified that his two sen-

---

9. Records show a release date of November 26, 1998. *See* Def. Ex. 6O, 6P. Plaintiff claims that he was released on November 23, 1998. *See* Compl., Statement of Claim (No-

vember 23, 1998). The few days' difference does not appear to be relevant to plaintiff's claims.

tences for violation of probation were to run concurrently *with each other* — since there were two offenses before him, with concurrent sentences, concurrent terms of probation, and the same violation of probation — he appears to have also indicated that those sentences were not to run concurrently with "all sentences previously imposed for any other offenses." *See* Def. Exs. 2 and 3 (imposing concurrency and writing in by hand the numbers of the offenses before Judge Salus, but crossing out the word "all"). Thus, the sentencing judge seems to have indicated that his sentences were to run concurrent with each other, but consecutive to any other sentences. Even if he had not done so, there is no indication that he explicitly ordered concurrency among any sentences other than the two before him, which would be required to override the presumption of *Lundberg* and *Pfeiffer* that sentences are consecutive where the prisoner is committed to different institutions on difference offenses in different proceedings.

In addition, plaintiff argues that the 6 months'[10] backtime for his violation of parole, imposed by the Board on August 23, 1996, was wrongfully imposed in the first place. Plaintiff's basis for the claim that the six-month penalty and resulting calculations are incorrect is that the Parole Board wrongly considered him to be a "convicted parole violator" rather a "technical parole violator," even though the new charges on which he was arrested at the time were later dropped. *See* Pet. for Writ of Mandamus (submitted as Ex. to Compl.) at ¶¶ 4–6 and at ¶¶ 1–2 of conclusion. However, the disputed August 23, 1996 action and all subsequent actions that refer to the six-month backtime penalty clearly state that the Parole Board consid-

ered plaintiff to be a "technical parole violator." *See* Pltf. Exs. (Board Actions dated August 23, 1996, December 12, 1996, August 19, 1997, and November 14, 1997).

For the foregoing reasons, summary judgment as to defendant Tillman is granted. An appropriate Order follows.

### ORDER

AND NOW, this day of March, 2001, upon consideration of defendant Mary Ann Tillman's Motion for Summary Judgment (doc. 11), and the response thereto, it is hereby ORDERED that the motion is GRANTED.

FURTHER ORDERED that this action is DISMISSED as to defendant Robert Johnson. *See* Fed.R.Civ.P. 4(m).

---

**10.** Plaintiff also refers to 21 months backtime, but the court is unable to discern a claim in this regard. *See* Pet. for Writ of Mandamus at ¶ 5.