546 So.2d 796 (1989)
Timmy Dean SHAW, Appellant,
v.
STATE of Florida, Appellee.
No. 88-772.
District Court of Appeal of Florida, First District.
July 27, 1989.
*797 Phil Patterson, Asst. Public Defender, Tallahassee, for appellant.
Kurt L. Barch, Asst. Atty. Gen., Tallahassee, for appellee.
THOMPSON, Judge.
Shaw appeals a judgment adjudicating him guilty of burglary of a conveyance and attempted burglary of a conveyance and sentencing him to one to four years' incarceration followed by one year's probation on the burglary of a conveyance charge and five years' probation on the attempted burglary of a conveyance charge to run consecutively to the incarceration time and concurrently to the probation time received on the burglary charge. He contends that, given the circumstances of this case, the trial court erred in accepting his pleas of nolo contendere and proceeding to impose sentences without conducting a Fla. R.Crim.P. 3.210 hearing as to his competence. We agree and reverse.
Shaw was charged by information with attempted burglary of a conveyance, burglary of a conveyance, grand theft, and criminal mischief. He entered pleas of nolo contendere to the charges of attempted burglary of a conveyance and burglary of a conveyance. The court accepted these pleas and adjudicated Shaw guilty of each offense. At the same hearing, prior to being sentenced, Shaw advised the court that he did not understand what was going on. His mother then informed the court that he "has a mental problem from birth, and he has a birth defect." The court proceeded to sentence Shaw. After hearing his sentences, Shaw advised the court that his attorney previously told him if he pled he would be given probation. He added, "I didn't even make a plea. He [counsel] made it for me."
A lengthy colloquy ensued between Shaw, his attorney, and the court in which his attorney stated that he did not advise Shaw that he would not receive a term of imprisonment and Shaw insisted that he had been told he would receive only probation. Shaw also stated that he had not done anything wrong and if he had known he was going to be sentenced to prison he would rather have taken the case to trial because he didn't commit the offenses.
After this discussion the trial judge announced that he had fully analyzed the factual basis for the plea and was satisfied with it. He further stated that there was no inducement to enter the plea, that the plea was entered into freely and voluntarily, and that the sentence would stand. Shaw then fled to the rear of the courtroom where he was subdued, became unconscious, and experienced a seizure.
Three days after sentencing, in apparent response to defense counsel's oral motion for the appointment of a psychologist to determine competency, the court entered an order appointing Dr. Fjordbak to examine Shaw to determine his competency. Although this order was entered three days after sentencing, the record reveals that Dr. Terrence Leland and Dr. Timothy Fjordbak each examined Shaw one day after the sentencing. Dr. Leland's report indicates that Shaw was committed to Florida State Hospital at age 18 as incompetent to stand trial on charges of burglary. The report recounts a history of suicide attempts, treatment with psychotropic medications, diagnosis of suffering from a personality disorder, brain damage at birth, and mild mental retardation. Dr. Leland concluded that Shaw met the criteria for involuntary hospitalization. Dr. Leland's report also includes a statement that Dr. Robert Head, the psychiatrist for the Leon County jail, evaluated Shaw the same day and diagnosed him as a chronic paranoid schizophrenic. Dr. Fjordbak stated in his report that Shaw met the criteria for commitment either to an HRS facility under § 394.67, Fla. Stat. or as a convicted felon *798 to the Department of Correctional Mental Health Institution at Chattahoochee under § 945.40, Fla. Stat.
The trial judge received the reports of Drs. Leland and Fjordbak on the same day that the order directing the examination was entered and immediately transmitted them to the Lake Butler Reception and Medical Center along with a letter stating that the reports indicated that Shaw met the criteria for involuntary commitment for mental treatment at that time. Although the letter also stated that Shaw was competent at the time he entered his plea and was sentenced that decision was made without the benefit of a Fla.R.Crim.P. 3.210 hearing.
When accepting Shaw's plea and at sentencing the trial judge was aware of circumstances indicating reasonable grounds to believe that Shaw may have been mentally incompetent. The pre-plea investigation report revealed a history of mental health treatment, including multiple prior commitments. Shaw's own statements suggested that he may have not fully comprehended his attorney's advice or the nature and scope of the court proceedings. The recitations of Shaw's mother as to his mental problems, and Shaw's conduct in fleeing to the rear of the courtroom where he became unconscious and experienced a seizure, are also pertinent factors. The trial judge was concerned enough to inquire as to whether Shaw needed a doctor, and entered a handwritten notation on the judgment stating that Shaw "suffered from a mental condition which required his removal from court to jail for appropriate treatment." The judge also sent a letter to prison authorities informing them that Shaw is in need of mental health treatment.
Fla.R.Crim.P. 3.210(b) requires that the court order a mental examination and competence hearing if there are reasonable grounds to believe that the accused is not mentally competent to proceed. See Kothman v. State, 442 So.2d 357 (Fla. 1st DCA 1983). The circumstances of the present case created reasonable grounds for such a belief, and the court should have ordered both an examination and hearing under Rule 3.210(b). The psychological evaluation which the judge approved after sentencing did not comport with the requirements of Rule 3.210(b), and the judge did not conduct the hearing that the rule specifies. A hearing on Shaw's competency to enter a plea and be sentenced or stand trial cannot constitutionally be held retroactively. Hill v. State, 473 So.2d 1253 (Fla. 1985). Thus, the judgment and sentences must be reversed and the case must be remanded to the trial court to begin de novo.
In view of our disposition of this case on the above issue, we need not reach the other issues raised by appellant. The judgment and sentences are vacated and the case is remanded with directions that the state may proceed to again prosecute Shaw only after a determination that he is competent to stand trial.
WENTWORTH and NIMMONS, JJ., concur.