573 So.2d 293 (1990)
Pedro MEDINA, Appellant,
v.
STATE of Florida, Appellee.
No. 73856.
Supreme Court of Florida.
November 21, 1990.
Rehearing Denied February 11, 1991.
*294 Larry Helm Spalding, Capital Collateral Representative, Billy H. Nolas, Chief Asst. CCR and Julie D. Naylor, Asst. CCR, Office of the Capital Collateral Representative, Tallahassee, for appellant.
Robert A. Butterworth, Atty. Gen. and Barbara C. Davis, Asst. Atty. Gen., Daytona Beach, for appellee.
PER CURIAM.
Pedro Medina, a prisoner on death row, appeals the trial court's denial of his motion for postconviction relief filed pursuant to Florida Rule of Criminal Procedure 3.850. We have jurisdiction. Art. V, § 3(b)(1), Fla. Const.; Fla.R.Crim.P. 3.850. We affirm the trial court's denial of relief.
A jury convicted Medina of first-degree murder and automobile theft and recommended that he be sentenced to death, which the trial court did. This Court affirmed the convictions and death sentence. Medina v. State, 466 So.2d 1046 (Fla. 1985). Two years later Medina filed a rule 3.850 motion raising seven issues and subsequently amended the motion to include seven additional issues: 1) whether his statements of April 9, 1982 should have been allowed into evidence; 2) whether his involuntary absence from the shackling hearing violated his rights; 3) whether shackling and handcuffing him violated his rights; 4) whether a Caldwell v. Mississippi, 472 U.S. 320, 105 S.Ct. 2633, 86 L.Ed.2d 231 (1985), violation occurred; 5) whether counsel rendered ineffective assistance by acquiescing to excusing a juror; 6) whether the court erred in limiting cross-examination of the victim's daughter; 7) whether the state's closing argument was improper; 8) whether the state violated Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), and counsel rendered ineffective assistance; 9) whether counsel rendered ineffective assistance and the state violated Brady regarding the victim's ex-boyfriend; 10) whether events raised doubts about Medina's competency to stand trial; 11) whether counsel rendered ineffective assistance by failing to investigate Medina's mental health and whether he received incompetent mental health assistance; *295 12) whether Medina was competent at sentencing; 13) whether counsel failed to investigate and present mitigating evidence; and 14) whether the charges against Medina should have been severed for trial.[1]
The trial court found twelve of the issues procedurally barred because they could have been, should have been, or were raised on direct appeal.[2] After a five-day evidentiary hearing[3] on the remaining issues, whether the state violated Brady and counsel rendered ineffective assistance (issue 8) and whether counsel failed to investigate and present mitigating evidence (issue 13), the trial court denied relief. Medina now disputes the court's findings and rulings on the two issues considered at the evidentiary hearing, claims that the court's actions at that hearing restricted his presentation, and argues that the court erred in finding the remaining issues procedurally barred.
Proceedings under rule 3.850 are not to be used as a second appeal. State v. Bolender, 503 So.2d 1247 (Fla.), cert. denied, 484 U.S. 873, 108 S.Ct. 209, 98 L.Ed.2d 161 (1987). Moreover, it is inappropriate to use a different argument to relitigate the same issue. Quince v. State, 477 So.2d 535 (Fla. 1985), cert. denied, 475 U.S. 1132, 106 S.Ct. 1662, 90 L.Ed.2d 204 (1986). Therefore, the trial court correctly found the claims regarding admissibility of Medina's statements (issue 1), his being shackled (issue 3), and his competency (issues 10 and 12) procedurally barred because they, or variations of them, had been raised on direct appeal. Allegations of ineffective assistance cannot be used to circumvent the rule that postconviction proceedings cannot serve as a second appeal. Blanco v. Wainwright, 507 So.2d 1377 (Fla. 1987); Sireci v. State, 469 So.2d 119 (Fla. 1985), cert. denied, 478 U.S. 1010, 106 S.Ct. 3308, 92 L.Ed.2d 721 (1986). Thus, the court properly found barred claims 5 (excusing a juror), 6 and 9 (regarding cross-examination and the victim's boyfriend), and 11 (Medina's competency). Claims 2 (shackling hearing), 4 (Caldwell), and 7 (prosecutorial argument) do not involve fundamental error and should have been raised, if at all, on appeal, e.g., Blanco, and the court correctly found them to be barred.
This Court has long held that trial courts have "wide latitude" to regulate proceedings before them "in order that the administration of justice be speedily and fairly achieved in an orderly, dignified manner" and that "[i]n this function the trial Judge exercises the sound discretion with which he is vested." Hahn v. State, 58 So.2d 188, 191 (Fla. 1952). Medina has shown no abuse of discretion in the way the trial judge conducted this hearing.
The first issue considered at the evidentiary hearing contains several parts: Brady violation regarding a second knife; Brady violation as to a state witness' possession of drugs; and counsel's ineffectiveness for failing to discover, develop, and present that witness' criminal activity. Two attorneys represented Medina at trial, with Warren Edwards handling the guilt phase and Ana Rodriguez handling the penalty phase. Edwards, however, died before the evidentiary hearing took place. Regarding the knife, Rodriguez testified that she had never received any information about the knife from anyone, including Edwards. The prosecutor testified that he had no knowledge of the knife. The medical examiner testified that someone brought the knife to him at the end of the autopsy on the victim, that he photographed the knife and kept the photograph in his official file on the case, and that both sides, as a matter of policy, had the right to inspect his file. The court ruled as follows:
No evidence was presented by defendant as to when this "second" knife was found, where it was found, by whom it was found, who presented it to the medical examiner or whether it had any connection *296 with a suspect in this case other than defendant Medina. It was not shown that this "second" knife would have been admissible at the trial. Further, because of Edwards' untimely death, we do not know whether he was aware of the existence of this knife.
Consequently, I am unable to find that the "second" knife was evidence favorable to Medina, that is to say, that if it had been disclosed, it might have made the difference between Medina's conviction and acquittal. This claim is without merit.
(Citation omitted.)
"The test for measuring the effect of the failure to disclose exculpatory evidence, regardless of whether such failure constitutes a discovery violation, is whether there is a reasonable probability that `had the evidence been disclosed to the defense, the result of the proceeding would have been different.'" Duest v. Dugger, 555 So.2d 849, 851 (Fla. 1990) (quoting United States v. Bagley, 473 U.S. 667, 682, 105 S.Ct. 3375, 3383, 87 L.Ed.2d 481 (1985)). Medina has shown no error in the court's ruling.
The same holds true for the second part of this issue. Medina tried to sell the victim's car in Tampa to Michael White. White testified against Medina at trial that, instead of giving him the car, Medina stabbed White, took his money, and drove away. Current counsel claims that, when found by police after being stabbed, White had marijuana on him but was never charged or prosecuted for that offense in exchange for his testimony against Medina. According to current counsel, the state's failure to disclose all the facts surrounding White violated Brady, and Edwards' failure to discover those facts constituted ineffective assistance. The court found as follows:
Neither White nor any law enforcement officer from Hillsborough or Orange Counties was called at the hearing to testify that White had been found in possession of marijuana at the time of the stabbing incident. Certified copies of Hillsborough County Circuit Court records were introduced. There was no criminal complaint or information charging a Michael White with possession of marijuana on the date of the incident. The records did show, however, that a person by the name of Michael White was on felony probation on that date and up through the date of Medina's trial. Sharpe, the trial prosecutor, testified that he furnished the Hillsborough County Sheriff's reports relating to the incident to defense counsel. The reports which he furnished made no mention that White possessed marijuana. Sharpe further testified that he was unaware of White's legal situation in Tampa and that he had only met White one time before he testified at trial.
On this evidence, I am unable to find, as defendant would have me do, that the Michael White who testified at trial was found in possession of marijuana at the time of the stabbing incident; that the police and prosecutor agreed with White that he would not be prosecuted for possession of marijuana or probation violation in return for his testimony against Medina or that they withheld this information from Medina's trial counsel. This claim is without merit.
We agree.
To prevail on a claim of ineffective assistance, both substandard performance and prejudice caused by that performance must be shown. Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). The court applied the Strickland v. Washington test properly and found:
As noted above, the defendant failed to establish at the hearing that this impeaching evidence existed. Due to his untimely death, we do not know from Mr. Edwards what efforts he made, if any, to find evidence with which to impeach White.
Assuming arguendo that such evidence existed and that Edwards had impeached White with it, I find that there is no reasonable probability that the outcome of the trial would have been different. The state presented White's testimony at the trial to prove that Medina was in *297 possession of the murder victim's car and a knife shortly after the murder. Even if White's testimony had been discredited entirely, the state presented another witness, a FHP Trooper, who testified that on the day after the murder, he arrested Medina in the murder victim's car in a rest area on I-75 near Lake City, Florida and that he found a knife in the car which was introduced in evidence at the trial. Given the trooper's testimony (which would have corroborated White or established the point independent of White), and the other incriminating evidence introduced at the trial, there is no reasonable probability that Medina would have been acquitted even if White's credibility had been totally destroyed.
The second claim presented at the evidentiary hearing alleged that counsel rendered ineffective assistance at the penalty phase by failing to present testimony of the victim's two daughters, Medina's mother, who lived in Cuba, and others who knew him and by failing to obtain experts who would testify as to nonstatutory mental health mitigating evidence. After considering the daughters' evidence, the court held that
it would have carried little or no weight with the jury nor with me as the sentencing judge. To the contrary, it supported the state's theory at trial that since there were no signs of forced entry to the victim's apartment, the murderer had to have been a person like Medina who was known to and trusted by the victim.
Consequently, I find no reasonable probability that this testimony would have affected the outcome of the penalty phase trial or the sentencing.
We agree that the daughters' current testimony would not have affected the outcome and that, therefore, the Strickland v. Washington test has not been met.
Rodriguez testified that she knew it was possible, although difficult, to get information from Cuba, but that, as a matter of strategy, she wanted to deemphasize Medina's coming to this country in the Mariel boat lift. Based on her testimony and the questionable authenticity of the affidavit presented by current counsel, the court stated:
I find that trial counsel did not act unreasonably or ineffectively in failing to procure and present an affidavit from Medina's mother.
I further find that even if the proffered affidavit had been presented at the penalty phase trial or at sentencing, there is no reasonable probability that it would have made a difference in the ultimate outcome of the penalty phase trial or sentencing given the derogatory aspects of Medina's childhood and arrival in this country and the 10 to 2 vote of the jury.
Again, the test for demonstrating ineffectiveness has not been met. Compare Blanco (deemphasizing Mariel background is acceptable strategy).
Medina's sponsor in this country and a counselor who had come to know him in jail testified on Medina's behalf at sentencing. Rodriguez testified that she knew of no other people who would have testified for Medina. The trial court found that "[n]o evidence was introduced to show that there were other persons available to trial counsel through due diligence able to give beneficial[,] able to give favorable testimony." We find no error in this ruling.
Rodriguez also testified that she did not pursue the appointment of mental health experts at sentencing because the defense wanted to present Medina's mental health in the most favorable light and that the reports from the doctors who had examined him and from the jail psychologist were unfavorable. The court found as follows:
Assuming arguendo that trial counsel was ineffective in not requesting appointment of mental health experts, the testimony of the two psychologists and one psychiatrist retained by hearing counsel to evaluate Medina after sentencing showed in essence that defendant was psychotic; he had organic brain damage; he was diagnosed to be suffering from paranoid schizophrenic or major depressive disorder, recurrent, with psychosis, of long standing, and he was potentially dangerous. Only the psychiatrist testified *298 that Medina could be rehabilitated and then only if stabilized by proper medication and therapy. All of this testimony was derogatory and would have had, if anything, an adverse effect on the jury.
Furthermore, had Medina presented this testimony at the penalty phase trial, it would have opened the door for the state to have cross-examined the experts as to the information and records upon which their opinions were based. This would have allowed the state to bring out that Medina was released from a mental institution in Cuba and came over to the United States in the Mariel Boat Lift, and that there were numerous instances of Medina's resisting guards and fighting with other inmates in jail which would have shown his violent tendencies.
Medina's counsel confuses the concepts of admissibility and probative effect of the evidence. True this evidence would have been admissible, but had it been presented at the penalty phase trial and at sentencing, it would have more likely strengthened the jury's resolve to recommend a sentence of death. Given the circumstances that the victim was a middle-aged school teacher who had be-friended Medina; that he violated her trust and confidence to gain entry and steal her automobile; and his violent method of inflicting death by multiple stab wounds, I find that there is absolutely no reasonable probability that this type of evidence would have changed the jury's vote or caused me to impose a sentence of life imprisonment.
(Citation omitted.) We agree.
Medina has shown no error in the trial court's denial of his motion for postconviction relief, and we affirm the trial court's order.
It is so ordered.
SHAW, C.J., and OVERTON, McDONALD, EHRLICH, BARKETT, GRIMES and KOGAN, JJ., concur.
NOTES
[1] Medina does not mention the last issue, severance, on appeal and has therefore waived that claim.
[2] The court found claims 1 through 7, 9 through 12, and 14 barred.
[3] Oct. 6, 7 and Nov. 21-23, 1988.