690 So.2d 1241 (1997)
Pedro MEDINA, Appellant,
v.
STATE of Florida, Appellee.
Nos. 89758, 89762.
Supreme Court of Florida.
February 10, 1997.
*1242 Martin J. McClain, Litigation Director and Jennifer M. Corey, Assistant CCR, Office of the Capital Collateral Representative, Tallahassee, for Appellant.
Robert A. Butterworth, Attorney General; and Kenneth S. Nunnelley and Judy T. Rush, Assistant Attorneys General, Daytona Beach, for Appellee.
PER CURIAM.
Pedro Medina appeals orders entered by the circuit court denying appellant's motions for postconviction relief. We have jurisdiction. Art. V, § 3(b)(1), Fla. Const. We reverse and remand for an evidentiary hearing pursuant to Florida Rule of Criminal Procedure 3.812. We find there is a need for an evidentiary hearing because in the submissions to the circuit court pursuant to Florida Rule of Criminal Procedure 3.811 there were three experts stating Medina is competent to be executed and three other experts stating Medina is not competent to be executed. We affirm as to all other issues.

FACTUAL BACKGROUND
Medina came to the United States from Cuba in 1980 when he was nineteen years old. Medina eventually lived with his half-sister in Orlando. Dorothy James, the victim, lived in an apartment next to Medina's half-sister. James befriended Medina.
James was found dead in her apartment on April 4, 1982. She had been gagged, stabbed multiple times, and left to die. Early in the morning of April 8, 1982, Medina was found asleep in James' automobile at a rest stop on Interstate 10 near Lake City and was arrested for theft of the automobile. The next day, detectives from Orange County investigating the murder of James interviewed Medina in *1243 the Columbia County Jail about the auto theft and the murder. Medina's explanation of how he came to be in James' vehicle was not believed by the detectives.[1] Medina was arrested and indicted for the murder of James.
Medina requested a psychiatric examination and was examined by two psychiatrists. Each determined that Medina met the statutory criteria for competence to stand trial. The trial court found Medina competent to stand trial.
Medina was tried before a jury in Orange County on March 15 through 18, 1983. Medina testified in his own defense. Medina denied murdering James. However, Medina admitted being in James' apartment the night of the murder. Medina admitted that he was in James' apartment when James was dead. Medina admitted that a hat found by police detectives on a bed near James' body was his hat. Medina admitted taking James' automobile after she was murdered. Medina admitted driving James' automobile to Tampa and offering to sell the automobile in Tampa to a man with whom he engaged in a fight at the time of the attempted sale. The man to whom Medina was selling the automobile testified that he gave Medina $250 for the automobile, but then Medina left with the automobile. When law enforcement officers searched the vehicle following Medina's arrest, a knife was found in the vehicle.

PROCEDURAL HISTORY
Medina was convicted of first-degree murder and auto theft. The jury, by a ten-to-two vote, recommended the death penalty for the murder conviction. The trial court found two aggravating circumstances[2] and a single mitigating circumstance.[3] The court found the aggravating circumstances outweighed the mitigating circumstance and sentenced Medina to death. This Court affirmed Medina's convictions and sentences. Medina v. State, 466 So.2d 1046 (Fla.1985).
Medina then filed a motion for postconviction relief pursuant to Florida Rule of Criminal Procedure 3.850. The trial court determined that twelve of his fourteen claims were or could have been raised on direct appeal and therefore were procedurally barred. The court held an evidentiary hearing on the other two claims: withholding of material, exculpatory evidence by the State in violation of Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), and ineffective assistance of counsel during the sentencing phase in that counsel failed to investigate and present compelling and available mitigation evidence. The trial court denied all relief, and this Court affirmed the denial. Medina v. State, 573 So.2d 293 (Fla.1990). Medina filed a state petition for writ of habeas corpus, and this Court denied the petition. Medina v. Dugger, 586 So.2d 317 (Fla.1991).
Medina thereafter filed a federal petition for a writ of habeas corpus alleging numerous constitutional violations. The district court denied the petition. On appeal to the Eleventh Circuit Court of Appeals, Medina raised thirteen claims, only three of which the court of appeals found merited discussion. Medina v. Singletary, 59 F.3d 1095 (11th Cir.1995), cert. denied, ___ U.S. ___, 116 S.Ct. 2505, 135 L.Ed.2d 195 (1996). One of the issues discussed by the court was Medina's claim that he was incompetent to be tried. Id. at 1105. The Eleventh Circuit affirmed the district court's denial of Medina's petition. Id. at 1114. The United States Supreme Court denied certiorari. Medina v. Singletary, ___ U.S. ___, 116 S.Ct. 2505, 135 L.Ed.2d 195 (1996).
On February 17, 1995, Medina, proceeding pro se, filed a civil rights action pursuant to 42 United States Code, section 1983 (1993), against the Capital Collateral Representative (CCR) and several of the attorneys in the CCR office who had been involved in his representation. The claim was centered mainly upon allegations that CCR's attorneys *1244 had not effectively represented him in the state proceedings and in the federal habeas proceeding. The federal district court dismissed the claim. Medina v. Minerva, 907 F.Supp. 379 (M.D.Fla.1995). Medina filed a notice of appeal on December 12, 1995, which was dismissed on July 3, 1996.
The Governor signed Medina's death warrant on October 30, 1996. The execution was scheduled for December 5, 1996. Medina filed a motion for change of counsel, which the trial court granted with the caveat that CCR continue to represent Medina. This Court upheld the trial court's ruling in an order directing CCR to continue representing Medina. Next, Medina filed in this Court a petition for all writs jurisdiction alleging that execution by electrocution is per se cruel and/or unusual punishment. This Court denied the petition, as did the Eleventh Circuit Court of Appeals and the United States Supreme Court. Medina v. Butterworth, ___ U.S. ___, 117 S.Ct. 553, 136 L.Ed.2d 435 (1996). Medina filed a motion to disqualify the trial judge from presiding over subsequent motions relating to Medina's death warrant. The judge disqualified himself and appointed another judge to consider Medina's motions.
On December 2, 1996, Medina's counsel wrote a letter to the Governor asking for a stay of execution in light of a mental health expert's assessment that Medina was not competent to be executed. The letter invoked the provisions of section 922.07, Florida Statutes (1995), which sets forth an executive procedure for determining competence to be executed, and therefore the Governor stayed the execution pending a psychiatric determination of competence for execution. Pursuant to section 922.07, the Governor appointed a commission of three psychiatrists to determine whether Medina understood the nature and effect of the death penalty and why it is being imposed upon him. The psychiatric commission examined Medina and forwarded its findings in a report to the Governor on December 10, 1996. The report states that "it is the unanimous opinion of the members of this commission that Mr. Medina understands the nature and effect of the death penalty and why it has been imposed upon him." Based upon the commission's findings, the Governor lifted Medina's stay of execution on January 6, 1997. The Governor rescheduled Medina's execution for the week beginning January 27, 1997, and ending February 3, 1997.
On January 8, 1997, the circuit court held a telephone status conference in which counsel for Medina and the State discussed the scheduling of hearings on pending motions, what motions would be heard, and what was going to be filed. On January 8, 1997, the circuit court noticed a hearing for 9:30 a.m. on January 14, 1997, on a motion to withdraw by CCR, a motion to determine the competence of the defendant to proceed in the rule 3.850 proceeding, and a motion to appoint counsel for clemency proceedings. On January 10, 1997, counsel for Medina filed, pursuant to Florida Rule of Criminal Procedure 3.811, a combined emergency motion for a stay of execution pending judicial determination of competence. This motion was not noticed for hearing on January 14. Thus, Medina filed requests for two separate competency determinations: one on his competence to proceed in the 3.850 proceeding and one on his competence to be executed.
At the hearing on January 14, 1997, the circuit court first denied CCR's motion to withdraw and motion to appoint counsel for clemency proceeding. The court then heard extensive argument on the motion to determine the competence of defendant to proceed in postconviction proceedings pursuant to rule 3.850. The State contended that our decision in Jackson v. State, 452 So.2d 533 (Fla.1984), controlled. In Jackson, we held that a postconviction defendant is not entitled to a judicial determination of his competence to assist counsel in preparing either a 3.850 motion or a petition for writ of habeas corpus. Alternatively, the State noted that this Court was considering a case with an issue similar to one contained in Jackson. The State argued that in view of the short time period until the execution, the circuit court should consider evidence and rule on Medina's competence to proceed. The State asserted that it was ready at that time to put on the testimony of the three psychiatrists who had examined Medina at the request of *1245 the Governor. Medina's counsel responded that she was not prepared to present her three expert witnesses at an evidentiary hearing on the issue because she had come to the hearing with the belief that there was only to be legal argument on whether Jackson controlled. The State replied that it was Medina's counsel's motion which had been scheduled for hearing and that Medina's counsel should have been prepared for an evidentiary hearing because a hearing would occur if the motion were granted. The circuit court agreed to hear the State's witnesses who were present. The court then agreed to consider any affidavits submitted by Medina's counsel by the following day.
On January 15, 1997, the circuit court entered an order on the motion for determination of competence of defendant to proceed pursuant to rule 3.850 proceedings. In the order, the court made alternative rulings. The court first found that Jackson was controlling. Second, the court stated that it had reviewed the reports of the experts and other evidence submitted by the State and by Medina's counsel. The circuit court determined that the standard in determining the competence of Medina to proceed in postconviction proceedings was the standard set forth in Dusky v. United States, 362 U.S. 402, 80 S.Ct. 788, 4 L.Ed.2d 824 (1960). The circuit court then found that Medina "is competent to proceed in postconviction proceedings." On January 21, 1997, Medina's counsel filed a motion for reconsideration, which was denied by order dated January 23, 1997.
On January 16, 1997, the circuit court entered its order denying the combined emergency motion for a stay of execution pending judicial determination of competence. In the order, the court stated:
In accordance with the provisions of rule 3.811, the Court has extensively reviewed and considered the Motion, all reports of experts that were submitted to the Governor pursuant to the statutory procedure for executive determination of sanity to be executed, and all other evidentiary material and written submissions provided by the State and counsel for Defendant.
Based upon the totality of the Motion and all submissions, this Court finds that there are no reasonable grounds to believe that Defendant is insane to be executed.
On January 21, 1997, Medina filed a motion for reconsideration, which was denied by order dated January 23, 1997.
On December 6, 1996, Medina filed in the circuit court an emergency motion to vacate judgment and request for evidentiary hearing and stay of execution pursuant to rule 3.850. The State filed its response on January 17, 1997. On January 21, 1997, the circuit court held a hearing on Medina's motion pursuant to Huff v. State, 622 So.2d 982 (Fla.1993).[4]
In an extensive order dated January 23, 1997, the circuit court reviewed the factual and procedural history of the case and each of the claims that Medina asserted. The court then denied the 3.850 motion.
On January 24, 1997, Medina filed an appeal of the circuit court's orders. We held oral argument on January 27, 1997.

ARGUMENT I
Medina argues in this appeal that the circuit court erred in summarily denying Medina's combined motion for a stay of execution pending judicial determination of competence to be executed. Medina contends that the circuit court's order must be reversed because it ruled upon the motion without an oral hearing and because there were reasonable grounds to believe that the prisoner is not competent to be executed. Medina argues that, if submissions to the circuit court pursuant to rule 3.811 provide reasonable grounds to believe that a postconviction defendant is incompetent to be executed, *1246 the rule requires the circuit court to stay the execution and hold a hearing pursuant to rule 3.812, which provides for a hearing on insanity at the time of execution. Rule 3.811(e) provides:
(e) Order Granting. If the circuit judge, upon review of the motion and submissions, has reasonable grounds to believe that the prisoner is insane to be executed, the judge shall grant a stay of execution and may order further proceedings which may include a hearing pursuant to rule 3.812.
Medina points to the reports of two psychologists and one psychiatrist which his counsel submitted pursuant to rule 3.811(d)(4). In those reports, the psychologists and psychiatrist state that in their expert opinions, Medina is insane to be executed as defined in rule 3.811(b). We agree with Medina that an evidentiary hearing pursuant to rule 3.812 should be held in this case. We conclude that in this case the reports of the two psychologists and the psychiatrist meet the reasonable-ground threshold of rule 3.811(e) and that it was an abuse of discretion not to have an evidentiary hearing pursuant to rule 3.812 in view of the conflicting opinions of the experts. For this reason, we have stayed Medina's execution. We reverse the circuit court's order denying the motion pursuant to rule 3.811, and we remand to the circuit court for a hearing pursuant to 3.811(e) within twenty-one days of the date this opinion is filed.
In the rule 3.812 hearing, the evidence to be admitted is to be as stated in rule 3.812(d), which provides that the court may admit such evidence as the court deems relevant to the issues, including but not limited to the reports of expert witnesses. In respect to Medina's counsel for that hearing, we have reviewed the contention of Medina's counsel, Martin McClain, that he and other CCR attorneys have a conflict and cannot represent Medina in the competency proceeding. The factual basis of this contention focuses upon the following statement in the psychiatric commission's report to the Governor dated December 10, 1996:
An affidavit from a correctional officer stated that on or about December 2, 1996, Mr. Medina was overheard telling another inmate in the Death Row Watch area that his attorney had instructed him to "act crazy."
We conclude that this statement does not present a conflict as to McClain or as to CCR; neither does it require that McClain or CCR withdraw from representing Medina in the rule 3.812 proceedings. It is in the consistent interest of Medina and his counsel to deny that Medina was instructed by counsel to "act crazy." We find no legal or ethical reason why McClain or any other CCR counsel should not represent Medina in this proceeding. We expressly authorize counsel, if counsel decides it is in Medina's interest, to testify under oath at the rule 3.812 evidentiary hearing regarding this matter. Furthermore, the deposition of former death-row inmate John Mills may be admitted for consideration by the circuit court.[5]
For purposes of the rule 3.812 hearing, we also address Medina's contention that the requirement in rule 3.812(e) that a finding by the court that a prisoner is insane to be executed is to be by clear and convincing evidence is unconstitutional based upon the United States Supreme Court decision in Cooper v. Oklahoma, ___ U.S. ___, 116 S.Ct. 1373, 134 L.Ed.2d 498 (1996). We do not agree.
The circuit court is to follow rule 3.812(e), which provides:
(e) Order. If, at the conclusion of the hearing, the court shall find, by clear and convincing evidence, that the prisoner is insane to be executed, the court shall enter its order continuing the stay of the death warrant; otherwise, the court shall deny the motion and enter its order dissolving the stay of execution.
We find that Cooper does not apply to a rule 3.812 proceeding. In Cooper, the issue involved the standard of proof in determining *1247 whether a defendant was incompetent to stand trial, which is clearly different from a determination of sanity to be executed. In respect to competence to stand trial, the United States Supreme Court found that in weighing the interest of the defendant against the interest of the State, the defendant's interest was substantial and the State's interest was modest. However, in Ford v. Wainwright, 477 U.S. 399, 106 S.Ct. 2595, 91 L.Ed.2d 335 (1986), Justices Powell and O'Connor specifically found that in competency determinations for purposes of execution made while the execution is pending, the interests of the State were substantial. We specifically note the following from Justice Powell's concurring opinion:
First, the Eighth Amendment claim at issue can arise only after the prisoner has been validly convicted of a capital crime and sentenced to death. Thus, in this case the State has a substantial and legitimate interest in taking petitioner's life as punishment for his crime. That interest is not called into question by petitioner's claim. Rather, the only question raised is not whether, but when, his execution may take place. This question is important, but it is not comparable to the antecedent question whether petitioner should be executed at all. It follows that this Court's decisions imposing heightened procedural requirements on capital trials and sentencing proceedings do not apply in this context.
477 U.S. at 425, 106 S.Ct. at 2609-10 (Powell, J., concurring) (footnote omitted) (citations omitted), and from Justice O'Connor's concurring opinion:
The prisoner's interest in avoiding an erroneous determination is, of course, very great. But I consider it self-evident that once society has validly convicted an individual of a crime and therefore established its right to punish, the demands of due process are reduced accordingly. Moreover, the potential for false claims and deliberate delay in this context is obviously enormous. This potential is exacerbated by a unique feature of the prisoner's protected interest in suspending the execution of a death sentence during incompetency. By definition, this interest can never be conclusively and finally determined: Regardless of the number of prior adjudications of the issue, until the very moment of execution the prisoner can claim that he has become insane sometime after the previous determination to the contrary. These difficulties, together with the fact that the issue arises only after conviction and sentencing, convince me that the Due Process Clause imposes few requirements on the States in this context.
477 U.S. at 429, 106 S.Ct. at 2612 (O'Connor, J., concurring) (citations omitted).
Moreover, we note that in this case the issue of competence to stand trial was heard the day before Medina's trial began. It was determined that Medina was competent. No issue as to that determination was raised on direct appeal except Medina's claim that he was entitled to evaluation by a third mental-health expert. We ruled that this issue was without merit. The Eleventh Circuit Court of Appeals extensively reviewed and affirmed against the postconviction claims based on the pretrial and during-trial competency contentions. 59 F.3d at 1095.
We have granted a stay of execution in this case. We order that the evidentiary hearing pursuant to rule 3.812 be held. We here direct the circuit court to schedule the 3.812 hearing by written notice and to enter an order pursuant to rule 3.812(e) no later than twenty-one days from the date of the filing of this opinion. Within seven days of the filing of the hearing notice, the circuit court shall have a telephone scheduling and status conference to discuss the hearing. After the hearing, if the circuit court determines that Medina is competent to be executed, the stay which we have granted will continue until 7 a.m. on the twenty-first day following the date of the circuit court's order.

ARGUMENT II
Medina further contends that the lower court erred in determining that Medina had no right to a judicial determination of his competence to proceed under rule 3.850, erred in determining the standard for competence in postconviction proceedings, and erred in permitting the State to present witnesses *1248 without giving Medina an opportunity to do the same.
This issue is determined by Jackson. We find no basis in this case to revisit our decision in Jackson. This was a successive rule 3.850 proceeding, and until there was a determination that there was an issue that warranted an evidentiary hearing, Medina was clearly not entitled to a competency determination for the purpose of counsel proceeding to a Huff hearing.
Even assuming that Jackson did not control this case, we affirm the circuit court's order finding Medina competent to proceed in postconviction proceedings. We believe the Dusky standard is the correct standard for such a determination. We specifically reject Medina's contention that he was not given a fair opportunity to present witnesses. The motion was Medina's motion, in which he sought an evidentiary hearing. If Medina's counsel had a question about whether witness testimony could be presented, counsel should have inquired of the court. The State had its witnesses present. On January 8, the circuit court sent written notice of the January 14 hearing. We believe Medina's counsel was given adequate notice of the hearing. If Medina intended to offer live testimony in support of Medina's motion, the witnesses should have been present when the hearing was scheduled. We believe that confronted with the State's having witnesses available to oppose Medina's motion, the circuit court was well within its discretion to consider the live testimony of witnesses who were present and accept affidavits and reports from witnesses who were not present. Based upon the evidence presented, we find that the circuit court was within its discretion in determining that Medina was competent to proceed.

ARGUMENT III
Medina argues that the lower court erred in denying Medina's counsel's motion to withdraw. We find no merit in Medina's argument. We have addressed in respect to Argument I how counsel may proceed in the rule 3.812 hearing.

ARGUMENT IV
Medina argues that he was denied full adversarial testing of exculpatory evidence during the guilt and penalty phases of his trial. We find that the circuit court's order denying the emergency motion to vacate judgment and sentence dated January 23, 1997, considered and correctly ruled upon each of these issues. In the order, the circuit court delineates what Medina asserts as newly discovered evidence and explains why the evidence claimed to be newly discovered does not provide a basis for relief under rule 3.850. We quote the circuit court's well-written order in respect to the claims concerning Ernest Arnold, Reinaldo Dorta, Billy Andrews, and Joseph Daniels:
Correspondingly, nothing would have changed at all if Ernest Arnold had testified that there were two marijuana "joints" in an ashtray in the victim's apartment; nor would the jury have been swayed if he further testified that the detective told him not to say anything about his observation because the marijuana had nothing at all to do with the murder. This information simply had no relevance whatsoever. The same reasoning is true concerning the number of cigarettes Reinaldo Dorta gave to Defendant. At trial, it was mentioned that a Marlboro cigarette was found in an ashtray at the victim's home. Mr. Dorta testified that he had given Defendant Marlboro cigarettes. However, this information did not become a focus of the trial nor is it particularly relevant in light of Defendant's admission that he was at the victim's home the night she was murdered.
Faced with the evidence that the murder could have occurred in only a limited time period, that Defendant was seen around the victim's apartment during that time, that no forced entry was discovered, that Defendant admitted the victim knew him and would allow him to freely enter her home, that he was in the victim's apartment after she died, that he left his hat at the scene, that he took the victim's car and attempted to sell it, and that he was found in the car along with a knife hidden under a hubcap, the jury had no other choice but to convict Defendant. And, more importantly, *1249 that choice would have been the same even if presented with the additional evidence concerning Billy Andrews, Joseph Daniels, and marijuana "joints" and other cigarettes. Accordingly, this Court finds that presentation of this allegedly newly discovered evidence would not have produced an acquittal on retrial.
. . . .
Defendant's submission that the State withheld exculpatory evidence in violation of Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), is also barred because as discussed above the information upon which it is based is not newly discovered. Moreover, as also more fully discussed above, Defendant cannot show that "there is a reasonable probability that had the evidence been disclosed to the defense, the result of the proceeding would have been different." Mills v. State [684 So.2d 801, 805] (Fla.1996). Additionally, even if this Court found that the material concerning Billy Andrews and Joseph Daniels was newly discovered and hence, not time barred, there still would be no violation of Brady. Brady does not require disclosure of all information concerning preliminary, discontinued investigations of all possible suspects in a crime. Spaziano v. State, 570 So.2d 289 (Fla. 1990). In other words, simply because someone other than the defendant "was a suspect early in the investigation, though this theory was later abandoned, is not information that must be disclosed under Brady." Id. at 291.
Likewise, we find the circuit court's order is correct in respect to the other claims of newly discovered evidence.

ARGUMENT V
Medina argues that the lower court erred in rejecting his claim that he was denied his constitutional right to trial before a fair and impartial tribunal and to postconviction proceedings that comport with due process.
We agree with the circuit court that the information concerning Dorta's petition for habeas corpus and suit against Judge Powell and the state attorney were available public records for a period much longer than the period which qualifies newly discovered evidence in a successive 3.850 motion. The fact that Judge Powell was represented in that proceeding by the Attorney General's office is irrelevant. Judge Powell had no duty to disclose any of the facts which Medina alleged Judge Powell had a duty to disclose. We find no error regarding this issue.

ARGUMENT VI
Medina argues that Florida's statute limiting his right to pursue executive clemency constitutes an unconstitutional legislative intrusion into the executive function.
We agree with the circuit court that this issue is not properly the subject of a 3.850 motion. Moreover, this issue is not properly presented in an appeal from the circuit court's denial of the emergency motions presently considered. Therefore, we reject Medina's argument and find no error in the circuit court's ruling.

ARGUMENT VII
Medina argues that he is innocent of first-degree murder and that he is "innocent of the death sentence." We agree with the circuit court that this issue is procedurally barred. Even if it were not procedurally barred, we find Medina's argument to be without merit because it is based upon some allegations we have rejected previously.

CONCLUSION
In sum, we reverse the circuit court's denial of Medina's motion pursuant to rule 3.811. We remand for an evidentiary hearing pursuant to rule 3.812. We direct the circuit court to hold the hearing upon written notice and to enter an order pursuant to rule 3.812(e) no later than twenty-one days from the date this opinion is filed. We direct the circuit court to hold a status telephone conference concerning the rule 3.812 hearing no later than seven days from the date this opinion is filed. If the circuit court denies the rule 3.811 motion by order pursuant to rule 3.812(e), the order staying the execution entered by this Court on January 27, 1997, will remain in effect until 7 a.m. on the twenty-first day *1250 following the circuit court's order pursuant to rule 3.812(e).
All other orders of the circuit court are affirmed.
It is so ordered.
OVERTON, GRIMES and HARDING, JJ., concur.
WELLS, J., concurs in part and dissents in part with an opinion.
ANSTEAD, J., concurs in part and dissents in part with an opinion, in which KOGAN, C.J., and SHAW, J., concur.
NO MOTION FOR REHEARING WILL BE ALLOWED.
WELLS, Justice, concurring and dissenting.
In view of the majority's decision to enter a stay on January 27, 1997, and to reverse and remand for an evidentiary hearing, I concur with this decision and opinion on all issues except I would not have remanded for an evidentiary hearing. I dissented from the entry of the stay of execution because I believe it was unwarranted and because the stay order was not for a time specific.
I would not reverse the circuit court's order denying the rule 3.811 motion because I find that the circuit court adhered to the procedures of the rule. I do not believe that either our rule or the United States Supreme Court's decision in Ford v. Wainwright, 477 U.S. 399, 106 S.Ct. 2595, 91 L.Ed.2d 335 (1986), intend that executions are to be delayed simply by filing reports of experts who are willing to opine that a defendant is incompetent to be executed. This strips the discretion of reasonable grounds from a court and allows a procedure in which the process is easily subverted by the filing of reports. If this were the sanctioned procedure, then rule 3.811 should so state and not pretend there is a judgment to be made by the circuit court.
In this case, three qualified psychiatrists with substantial credentials examined Medina in December 1996 and found him to be sane. Medina, as late as 1995, filed lucid papers pro se in the United States District Court complaining about his counsel. I believe that under the circumstances of this case the circuit court was well within its discretion.
I also believe that it is the responsibility of this Court not to enter stays for indefinite periods. The Court's procedure should be that these issues are decided within a scheduled warrant period. I must take note that Medina was adjudicated guilty and sentenced in the trial court thirteen years ago. The case has been in the postconviction and appeal process since 1983. I believe we have the responsibility to guard against further delay in the execution of the sentence by setting a time period for any stay which we grant.
ANSTEAD, Justice, concurring in part, dissenting in part.
While I agree with the results announced on most issues, I find the plurality majority opinion inadequate in many respects and I disagree as to the course of further proceedings.

FACTS
Although most of the facts set out by the majority are accurate, they are incomplete, especially in failing to acknowledge Medina's long history of mental illness and that the case against Medina was based upon circumstantial evidence. They omit to note that Medina was a 19-year-old inmate of a Cuban mental asylum who was taken from the asylum and placed on a boat bound for the United States during the infamous 1980 Mariel boat lift, just two years before the murder in this case occurred. In our affirmance of Medina's conviction and sentence we concluded:
Medina has a behavioral problem. He testified that he had been hospitalized for mental problems in Cuba. His actions appear to be impulsive at times. The trial judge considered and weighed both the statutory and nonstatutory mitigating evidence and found that Medina had no significant prior criminal history. The trial judge also found, however, that the non-statutory mitigating evidence was entitled to little weight and that the aggravating *1251 circumstances outweighed the mitigating evidence. Compare Foster v. State, 369 So.2d 928 (Fla.), cert.denied, 444 U.S. 885, 100 S.Ct. 178, 62 L.Ed.2d 116 (1979)(death penalty affirmed for stabbing death and robbery even though defendant had extensive history of mental illness.)
466 So.2d at 1050. In addition, although we rejected Medina's later claim that his trial counsel should have investigated and presented evidence of his mental illness, we did so, not on the basis that the illness was not serious, but rather by approving the trial court's determination that the evidence of mental illness may have harmed Medina's case. We stated:
The [trial] Court found as follows:
Assuming arguendo that trial counsel was ineffective in not requesting appointment of mental health experts, the testimony of the two psychologists and one psychiatrist retained by hearing counsel to evaluate Medina after sentencing showed in essence that defendant was psychotic; he had organic brain damage; he was diagnosed to be suffering from paranoid schizophrenic or major depressive disorder, recurrent, with psychosis, of long standing, and he was potentially dangerous. Only the psychiatrist testified that Medina could be rehabilitated and then only if stabilized by proper medication and therapy. All of this testimony was derogatory and would have had, if anything, an adverse effect on the jury.
Furthermore, had Medina presented this testimony at the penalty phase trial, it would have opened the door for the state to have cross-examined the experts as to the information and records upon which their opinions were based. This would have allowed the state to bring out that Medina was released from a mental institution in Cuba and came over to the United States in the Mariel Boat Lift, and that there were numerous instances of Medina's resisting guards and fighting with other inmates in jail which would have shown his violent tendencies.
Medina's counsel confuses the concepts of admissibility and probative effect of the evidence. True this evidence would have been admissible, but had it been presented at the penalty phase trial and at sentencing, it would have more likely strengthened the jury's resolve to recommend a sentence of death. Given the circumstances that the victim was a middle-aged school teacher who had befriended Medina; that he violated her trust and confidence to gain entry and steal her automobile; and his violent method of inflicting death by multiple stab wounds, I find that there is absolutely no reasonable probability that this type of evidence would have changed the jury's vote or caused me to impose a sentence of life imprisonment.
(Citation omitted.) We agree.
Medina v. State, 573 So.2d 293, 297-98 (Fla. 1990). Hence, it is clear that Medina has a long history of serious mental illness.
Another interesting, and somewhat unusual aspect of this case is that the surviving daughters of the victim in this case have testified that they do not believe that Medina killed their mother and they are against him being executed. Again, this was a subject of Medina's complaint about the conduct of his counsel that was rejected by the trial court and that we approved on appeal:
After considering the daughters' evidence, the court held that
it would have carried little or no weight with the jury nor with me as the sentencing judge. To the contrary, it supported the state's theory at trial that since there were no signs of forced entry to the victim's apartment, the murderer had to have been a person like Medina who was known to and trusted by the victim.
Consequently, I find no reasonable probability that this testimony would have affected the outcome of the penalty phase trial or the sentencing.
We agree that the daughters' current testimony would not have affected the outcome and that, therefore, the Strickland v. Washington test has not been met.
*1252 573 So.2d at 297.[6]

Rule 3.850
The most troubling aspect of the appellant's 3.850 motion that clearly requires an evidentiary hearing is the claim that the State possessed evidence that someone else other than Medina killed the victim in this case and failed to disclose that evidence to the defendant as required by Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). It is undisputed at this point that the State possessed evidence that implicated Joseph Daniels in the murder and failed to disclose this evidence to the defendant. In fact, and incredible as it now appears, the record actually demonstrates that the State represented on the record in earlier postconviction proceedings that absolutely everything in its files was furnished to the defendant. That "everything" was actually packaged together and placed in the record. However, recently, and to the State's credit, it has acknowledged that not "everything" was furnished at that time. Among the newly furnished materials recently provided by the State is evidence of Joseph Daniels' involvement in this murder. The record reflects, of course, that even before this time the victim's former boyfriend, Billy Andrews, was a serious suspect. The involvement of Andrews was a major part of the defense at trial.
The majority has approved the trial court's refusal to hold a hearing on the Brady violation based on the trial court's reasoning that "simply because someone other than the defendant was a suspect early in the investigation" is not information that must be disclosed under Brady. Majority op. at 1249. However, what the trial court and the majority have overlooked is that the evidence not disclosed here is not just the existence of another suspect. Rather, it is specific relevant evidence implicating Joseph Daniels:
Newly discovered evidence reveals that prosecutors and the OCSO [Orange County Sheriff's Office] failed to disclose critical information to the defense. They failed to inform the defense that key prosecution witnesses initially told OCSO investigators that a man named Joseph Daniels had been threatening the victim during the weeks before her death, and that Dorothy James was in fear of Joseph Daniels and what he would do. Specifically, the police were told that Dorothy James was "afraid of him" (Joseph Daniels), that "he had threatened her several times," that he had "said if I can't have he[r] no one will" and that "Daniels made a threat that he would get her (meaning Dorothy)."
Not only did the prosecutor compound the violation of Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), by telling the jury that everything had been disclosed, see Garcia v. State, 622 So.2d 1325 (Fla.1993), but the OCSO detective in charge of the investigation affirmatively withheld this information during his deposition. ROA. 1232 (Transcript of deposition of Detective Daniel Nazarchuck). When asked whether there was anything the detective had not brought forth about his investigation, Detective Nazarchuck replied, "I think you'll find everything in my report or in the witnesses' statements which you should have." Id.

Appellant's Brief at 5. Based upon the State's recent disclosures, it is apparent that the *1253 identity of several actual witnesses who had knowledge of the relationship and threats by Daniels against the victim was withheld by the State. The defendant had a right to know the identity and evidence possessed by these witnesses, and the opportunity to independently investigate the evidence under Brady v. Maryland. There is no rational basis for this Court or the trial court to summarily conclude that this evidence was meaningless.[7] When it is apparent that the case against appellant was largely circumstantial[8] and that it is now apparent that the State had not one, but two other credible suspects,[9] it is clear that an evidentiary hearing must be held to resolve this claim.

Rules 3.811 and 3.812
Rule 3.811 and Rule 3.812 of the Rules of Criminal Procedure explicitly provide for a de novo evidentiary hearing on the issue of a defendant's competency to be executed when there are "reasonable grounds to believe that the prisoner is insane to be executed." This language is unambiguous and, in fact, is almost identical to rule 3.210(b) concerning the competency to stand trial:
If, at any material stage of a criminal proceeding, the court of its own motion, or on motion of counsel for the defendant or for the state, has reasonable grounds to believe that the defendant is not mentally competent to proceed, the court shall immediately enter its order setting a time for a hearing to determine the defendant's mental condition....
(Emphasis supplied). This Court and the district courts have consistently interpreted rule 3.210(b) to require a hearing on competency based upon a wide range of evidence that suggest "reasonable grounds to believe that [a defendant] might be incompetent." Nowitzke v. State, 572 So.2d 1346 (Fla.1990). Under rule 3.210(b) these grounds have ranged from the defendant's refusal to cooperate with counsel and accept a favorable agreement, Scott v. State, 420 So.2d 595 (Fla. 1982), to cases involving detailed histories of mental illness, Hill v. State, 473 So.2d 1253 (Fla.1985). See also Tingle v. State, 536 So.2d 202 (Fla.1988); Martin v. State, 515 So.2d 189 (Fla.1987); Jones v. State, 362 So.2d 1334 (Fla.1978); Calloway v. State, 651 So.2d 752 (Fla. 1st DCA 1995); Unruh v. State, 560 So.2d 266 (Fla. 1st DCA 1990); Shaw v. State, 546 So.2d 796 (Fla. 1st DCA 1989); Weber v. State, 438 So.2d 982 (Fla. 3d DCA 1983).
In this case, the defendant presented extensive evidence of his long mental illness which included the detailed reports and affidavits of three professional mental health experts who had examined the defendant at length. These experts concluded that the *1254 defendant was incompetent to be executed insofar as his mental ability to comprehend what was happening to him. Clearly, under the caselaw set out above, and any objective evaluation of the evidence, there are reasonable grounds in this record to believe that Medina was incompetent to be executed.
That doesn't mean that the State does not possess evidence to the contrary, and is entitled to present that evidence at a hearing. It simply means that the trial court must conduct a hearing and make a fair and just denovo determination of the issue of competency. A trial judge cannot just summarily accept the State's experts' opinions over those presented by the defendant.[10] That is what judicial evidentiary hearings are for: to carefully and fairly assess and evaluate all of the evidence before rendering a fair and reasoned decision based on the evidence.

COMPETENCY TO ASSIST COUNSEL
The State maintained below and the trial court agreed that the defendant was not entitled to a hearing on his competence to proceed and assist his counsel in postconviction proceedings. This Court has affirmed that ruling on the authority of Jackson v. State, 452 So.2d 533 (Fla.1984). However, the trial court accepted the State's suggestion that the court also conduct an evidentiary hearing on Medina's competency to proceed. Presumably because the State and the trial court were concerned that if this Court retreated from Jackson there would be further delay, the Court granted the State's request to hear the testimony of the mental health experts who had examined the defendant for the Governor. The problem is the defendant did not have his mental health experts available. Notwithstanding their absence, the trial court went forward and ruled the defendant competent based upon the testimony from the State's experts. In view of our adherence to Jackson that hearing is now meaningless. The danger the trial court faces on remand, however, is that it will not decide the competency to be executed issue on the basis of the evidence received at the hearing, but instead will be biased by reason of its earlier ruling, moot though it is, on the competency to proceed issue. Indeed, the State contended unsuccessfully here that the trial court's ruling moots the need for a further hearing on the competency to be executed issue:
Because Medina failed to establish "reasonable grounds", which he cannot do in the face of the finding by the Governor's commission that he is malingering, the trial court properly refused to grant a stay of execution and order additional proceedings.
As the order makes clear, the trial court did not incorporate the evidence from the hearing on competence to proceed with the 3.850 motion because the Rule 3.811 standard is a threshold standard that Medina failed to meet. To the extent that further discussion is needed, it is sufficient to state that if Medina is competent under 3.211, and the court found that he is, then Medina is clearly competent for execution.
Although I disagree with the majority's conclusion that Jackson is controlling, and would remand for a single full and fair evidentiary hearing on both competency issues, I write on this issue only to warn of the danger made evident by the State's unsuccessful argument on appeal. The trial court must be vigilant in this regard. We are not remanding for a useless exercise as claimed by the State, but for a fair judicial determination of competency as contemplated by rule 3.812.
KOGAN, C.J., and SHAW, J., concur.
NOTES
[1] Medina admitted during his trial testimony that the statement given to the Orange County detectives was a lie.
[2] The aggravating circumstances were: (1) that the murder was especially heinous, atrocious, or cruel; and (2) that the murder was committed for pecuniary gain.
[3] The mitigating circumstance was that Medina had no significant history of prior criminal activity.
[4] In its order, the circuit court noted:

Huff requires that attorneys representing a death-sentenced individual be given the opportunity to appear before the court on an initial 3.850 motion. See Huff, 622 So.2d at 983. The purpose of such a hearing is to determine whether an evidentiary hearing is required and to hear legal argument relating to the motion. Huff does not indicate whether such a hearing is required on a successive 3.850 motion. In an effort to ensure that none of Defendant's rights are violated, this Court decided to hold a Huff hearing on this, Defendant's second 3.850 motion.
[5] The correctional officer stated in his affidavit that Medina's statement concerning CCR counsel was made to Mills. Mills was executed on December 6, 1996. CCR states in the brief filed on Medina's behalf in this appeal that Mills' deposition was taken.
[6] However, her daughters have both expressed their reservations regarding the conviction under oath. At the 3.850 evidentiary hearing in 1988, Lindi James testified:

I have a big conscious [sic] and through the years, I've thought about, you know, people ask me about my mother and I tell them what happened to my mother. And the first reaction is, oh my God. They'll say, did they get who did it? My first response, from the time that it happened, well, they did arrest somebody, they did convict somebody, but I never thought that they [Pedro Medina] did it. They [the police] never asked me what I thought at the time.
In November of 1996, Lindi James reaffirmed this testimony in an affidavit:
I, LINDI JAMES, having been duly sworn or affirmed, do hereby depose and say:
1. Dorothy James was my mother. She was killed on April 3 or 4, 1982. I do not believe Pedro Medina killed my mother although he was convicted of doing so and sent to death row. I have never believed Pedro killed my mother.
2. I believe that the man who killed my mother has never been brought to justice. I informed Detective Nazarchuck that I thought someone else had committed the murder.
[7] In denying Medina relief on this issue, the trial court misapprehends the significance of the newly discovered evidence as to Joseph Daniels when it emphasizes that trial counsel "ably argued that Billy Andrews was the true murderer and that he had the motive and opportunity to kill the victim," and then suggests that any argument implicating Daniels would have somehow "detracted" from the argument directed at Andrews or otherwise would have "confused the jury." This is a patently unreasonable rationale for ignoring this information since this is exactly the kind of evidence, i.e., evidence that the defendant is not the killer and that another, identifiable suspect is, that legitimately creates reasonable doubt in the minds of jurors. To state the obvious, that there were two individuals other than the defendant who may have killed the victim, rather than just one other suspect, does not detract from the significance of this clearly exculpatory evidence.
[8] Even the evidence of the knife possessed by the defendant was brought into question by the discovery of a "second" knife. See Medina, 573 So.2d at 295-96.
[9] The trial court also misapprehends the significance of Reinaldo Dorta's recent statement that he gave Medina only one Marlboro cigarette, which Medina then smoked in his presence. The trial court dismissed this newly discovered evidence summarily, stating that while it was established at trial that a Marlboro cigarette was found in an ashtray in Ms. James' home and Dorta subsequently testified he had given Medina several Marlboros, "this information did not become the focus of the trial nor is it particularly relevant in light of Defendant's admission that he was at the victim's home the night she was murdered." Of course, this reasoning begs the question: If Medina was not the source of the Marlboro cigarette, who was? Either by itself and certainly in conjunction with the newly discovered evidence regarding Joseph Daniels, this information is "particularly relevant" to whether the jury would have had a reasonable doubt as to Medina's guilt and reinforces the need for an evidentiary hearing.
[10] This is especially true where it is clear from the reports of the state's mental health experts that they have relied in part on evidence concerning Medina's alleged statements in custody that his lawyers told him to "act crazy." This is rather unfortunate given that the State represented to this Court in its response to CCR's motion to withdraw and petition for writ of habeas corpus of December 5, 1996 that should this Court accept jurisdiction over that issue, the State "withdraws the affidavit [relating to the defendant's alleged statement in custody] hereupon and herewith." We denied rather than dismissed the motion and petition, thereby taking jurisdiction. Yet the affidavit and allegations were not withdrawn.